WALTER ARNOLD v. THE STATE.

No. 2978. Decided March 9, 1904.

1.—Local Option—Charge of the Court.

Where the evidence does not raise the issue of a loan, it is not error for the court to refuse to instruct the jury on this phase, although the defense interposed was that defendant borrowed the amount it required to pay a C. O. D. package at the express office from the witness to whom it was alleged he sold the whisky contrary to the local option law.

2.—Evidence—Facts Proving Sale.

Where A. on reaching a local option town asked defendant for whisky and the latter replied he had none, but that he might have a C. O. D. package at the express office, and that if he did there would be $3.50 charges on it, and that if A. would get defendant that amount he could have the whisky, whereupon A. got the money, handed it to defendant and they went to the express office, got the whisky, and defendant had not repaid A. at the time of trial.

or offered to do so, and the liquor had been used by the persons who clubbed together in raising the above amount, there was no evidence to raise the issue of a loan, and the evidence sustained the charge of a sale of whisky contrary to the local option law.

Appeal from the County Court of Ellis. Tried below before Hon. Lee Hawkins.

Appeal from a conviction for a violation of the local option law; penalty, a fine of $25, and confinement in jail for twenty days.

The opinion states the case.

*J. C. Lumkins,* for appellant.—Appellant's testimony in this case raised the issues of a loan of money, and of gifts of the whisky paid out of the express office with it; the charge of the court omitted these issues. The special charge requested on behalf of the appellant was pertinent to these issues and its refusal was erroneous. Ladwig v. State, 51 S. W. Rep., 390, 40 Texas Crim. Rep., 585; Black v. State, 1 Texas Crim. App., 368; Ross v. State, 9 Texas Crim. App., 375; Dreyer v. State, 11 Texas Crim. App., 503; Gabrielski v. State, 13 Texas Crim. App., 428; Evans v. State, 15 Texas Crim. App., 31; Johnson v. State, 19 Texas Crim. App., 545.

*Howard Martin,* Assistant Attorney-General, for the State. The title to the whisky was in appellant, although he had not paid the charges. This was a resale of the whisky. Taylor v. State, 8 Texas Ct. Rep., 693.

BROOKS, Judge.—Appellant was convicted of violating the local option law in Ellis County, and his punishment assessed at a fine of $25 and twenty days confinement in the county jail.

It was shown that the law is in force in Ellis County prohibiting the sale of intoxicating liquors. The indictment charged that appellant unlawfully sold intoxicating liquors to one Ed Albright, who testified for the State substantially as follows: "I came to Italy with several parties. When we reached town there was some talk among us as to getting something to drink. I understood defendant had some whisky. I found him near Loyd's store, and asked him if he had any whisky. He first said he didn't; but afterwards admitted he might have a C. O. D. package at the express office; that if he did have, there would be $3.50 C. O. D. charges due on it, and if I would get him that amount I could have the whisky. I went to Frank Craig, Will Albright and Bob Brannon, who were just across the street. and told them about the whisky, and we all chipped in the amount. I contributed ninety cents or a dollar. The money was all given me. I took it back to defendant, and he and I went in a buggy to the express office, about some 300 or 400 yards away, and when we got there I gave defendant the money, and he went in the express office and shortly brought the whisky out, put it in the buggy, and we carried it back to Ed Zinn's restaurant. Defendant car-

ried it into the restaurant. I did not go in the restaurant then, but told defendant I would be back to the show that night and get mine. I went home; came back that night; went into Zinn's and defendant got me a quart. Both took a drink out of it, and defendant took a little whisky out of another bottle. It was whisky we drank. After this several of us were drinking around there out of first one bottle, and then another. Will Albright, one of the parties contributing to buying the whisky, did not stay in town to the show, and I was to bring his quart to him. I had no interest in nor knowledge of this whisky before it reached Italy— nor did I ever authorize Walter Arnold to order it for me."

Defendant testified substantially as follows: "On the day of the Mollie Bailey show, Albright came to me to get some whisky. I told him I did not have any that I knew of. He said he heard I had some at the express office. I told him I did not know; that if I did, and he would lend me $3.50, he could have the whisky; that I did not have the money to pay it out—$3.50 was the C. O. D. charges on the whisky. Albright did not then have it, but was gone awhile, and he and I got in a buggy and drove to the depot. He gave me the money. I went in, signed the express book, paid the money and got the whisky, which we took to Ed Zinn's restaurant, and I opened it up. Albright left, saying he would be back after awhile. When I opened up the whisky Bob Brannon and several others were there, but not Ed and Will Albright. I set two bottles out, and all commenced drinking, without reference to any particular bottle. I was a little sick and did not drink, but took some out of a pint bottle. I set one quart bottle back in the back end of the restaurant, and when Ed Albright came back that night, got it and gave it to him. When Albright came to me for whisky, I told him I would not sell him the whisky, that I had had trouble with this local option law; but that if he would lend me the $3.50 I would give him the whisky; that if he would get the $3.50 I would get the whisky, and the boys could drink it." On cross-examination defendant testified: "The whisky was a C. O. D. package, from Kansas City. Neither Ed nor Will Albright, Bob Brannon nor Frank Craig had authorized me to order the whisky for them. I had gotten a good many packages of whisky from them; and as to that, other whisky houses, also in Dallas, Fort Worth and Waco during the fall. I do not know that it is the method by which myself and Bill Morris violate the local option law at Italy, under the guise of a pretended loan. Yes, I had money at the time I borrowed this from Albright. I had $10 in my pocket. Told him I would get money at the gin to repay him at the end of the week." Question: "And you had $10 in your pocket at the time?" A. "Yes, I had $20, two $10 bills. I never repaid him the $3.50, nor offered to pay it; but I consider I still owe it to him."

Prosecuting witness recalled, testified: "That defendant came to me in Italy a few days ago, and asked me to come here and tell the county attorney that I was scared while in the grand jury room, and

told the grand jury wrong, and to tell you that I loaned him the money; and he gave me this whisky. I did not tell Walter Arnold that I was scared in the grand jury room, and told them wrong."

Under this state of facts appellant insists that the court erred in not charging the jury the following, as requested by him: "You are further instructed that, if you believe from the evidence in this case that defendant, Walter Arnold, borrowed from Ed Albright the money which he paid for the intoxicating liquor mentioned in this case, and that he gave away the liquor with no .intention of such giving being a consideration for such loan, if there was one, and that he still expected to repay the money, which he borrowed, if he did, from Ed Albright, then you are instructed to find for the defendant." There was no error in refusing this charge. Defendant's evidence does not raise the issue of a loan.

The evidence is sufficient. Taylor v. State, 8 Texas Ct. Rep., 693; Treadway v. State, 42 Texas Crim. Rep., 466. The judgment is affirmed.

*Affirmed.*